# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 14, 2014

## ASO HASSAN NEJAD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1748     Cheryl A. Blackburn, Judge**

---

**No. M2013-00165-CCA-R3-PC - Filed April 17, 2014**

---

Petitioner, Aso Hassan Nejad, was convicted by a jury of conspiracy to commit first degree murder and sentenced by the trial court to 25 years' incarceration. This court affirmed Petitioner's conviction and sentence on appeal. *State v. Aso Hassan Nejad a.k.a. Diako Nejad and Ako Hassan Nejad*, No. M2009-00481-CCA-R3-CD, 2010 WL 3562015 (Tenn. Crim. App., Sept. 14, 2010), *perm. app. denied* (Tenn., Feb. 17, 2011). Petitioner now appeals the post-conviction court's denial of his petition for post-conviction relief following an evidentiary hearing. Petitioner asserts that he was denied the effective assistance of counsel. Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeremy W. Parham, Manchester, Tennessee, for the appellant, Aso Hassan Nejad.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

The facts underlying Petitioner's aggravated robbery conviction were summarized in this court's opinion on direct appeal. *See id*. In short, on August 4, 2006, Petitioner, his brother, and several others arranged for a retaliatory ambush against two individuals who had previously robbed Petitioner of $1,500 during a drug deal. Petitioner and his co-conspirators

armed themselves and waited in a parking lot at Edwin Warner Park for the intended victims to arrive under the guise of completing another drug deal. A park ranger approached one of the co-conspirators, Salih, who was waiting in his vehicle and questioned him. Salih attempted to flee in his vehicle, and the park ranger pursued him. While in pursuit, gunshots were fired at the park ranger, causing multiple bullet holes in his vehicle, including one that was only one and a half feet away from his head. Petitioner was convicted of conspiracy to commit first degree murder.

*Post-conviction hearing*

At the evidentiary hearing, Petitioner testified that trial counsel was retained to represent him "two or three weeks" prior to trial and that he spoke to trial counsel "once or twice" before trial. Petitioner expressed concern that trial counsel did not have enough time to prepare for trial, and trial counsel told him that he would be ready and "not to worry about anything." Petitioner testified that he did not receive a copy of the State's discovery prior to trial. Petitioner testified that in discussing possible defenses, he told trial counsel that he and his co-defendants intended to rob the victims, not to kill them. He testified that trial counsel told him his best defense was that Petitioner "was never at the scene." Petitioner told trial counsel that he wanted to testify "to show the truth of what happened, that [he] got robbed and show that there was no conspiracy to kill anyone." Petitioner testified that trial counsel advised him not to testify. Petitioner acknowledged that he waived his right to testify at trial and did not assert his desire to testify to the trial court. He testified that it was his decision not to testify at trial, but that trial counsel "kind of influenced" his decision because trial counsel told Petitioner, "they was [sic] going to make [Petitioner] look bad."

Petitioner testified that although one of the individuals involved "brought a bag with some guns in it," Petitioner did not carry or fire a weapon. Petitioner acknowledged that the police found weapons at the scene. Petitioner testified that he and his co-conspirators "hadn't got to, you know, everybody grab a weapon and be ready[,]" but their plan was to commit the robbery with guns.

Petitioner testified that he asked trial counsel to call as witnesses at trial Nashwan Muhammed and Drau Kokoye. He testified that trial counsel never spoke to either witness because "[b]asically [trial counsel] was going to use the defense to say [Defendant wasn't] there. If those witnesses had testified, then they would testify that [Defendant] was there, which would have made [him] look bad."

Nashwan Muhammed testified that Petitioner's brother asked him to help rob the group of men who had robbed Petitioner, but Mr. Muhammed did not want to get involved. Mr. Muhammed testified that Petitioner's brother did not mention killing the intended

victims of the robbery. He testified that Petitioner's trial counsel never contacted him about testifying at Petitioner's trial.

Nechirvan Yahya testified that he was also charged with conspiracy to commit murder in this case. Following the trials of Petitioner and Petitioner's brother, Mr. Yahya pled guilty and received a sentence of ten years to be suspended on probation. Mr. Yahya testified that Petitioner's brother also asked him to participate in a retaliatory robbery and that they had no intentions of killing the intended victims. Mr. Yahya testified that "the plan was what was said from the beginning, was to rob them to get the drugs and the money. And that was that plan. There was no intention of murder or [to] kill anyone." Mr. Yahya testified that he was represented by counsel and that Petitioner's trial counsel did not contact him about testifying in Petitioner's defense.

Petitioner's trial counsel testified that he was retained by Petitioner's family to represent Petitioner approximately two weeks prior to trial. He testified that he reviewed the file of Petitioner's former attorney before meeting with Petitioner and that trial counsel believed he was prepared to represent Petitioner at trial. Trial counsel testified that he was concerned about Petitioner testifying because Petitioner's testimony that he "was willing without hesitation to commit a robbery with guns that could very and most likely end up in violence" would prejudice Petitioner in the minds of the jurors. Trial counsel testified that his theory of defense was to argue that "this was only a robbery," and that the State could not prove that Petitioner was present at the time of the offense. Trial counsel testified that he advised Petitioner it was "ultimately his choice" whether or not to testify but that trial counsel told Petitioner he "didn't think it was necessary [for Petitioner to testify] because it did come out through several [witnesses] that this was going to be a robbery."

Trial counsel testified that he reviewed discovery materials with Petitioner "[s]everal times before the trial" and that Petitioner already had discovery, and trial counsel was not provided any new discovery materials after he was retained to represent Petitioner. Trial counsel spoke to Petitioner about potential witnesses, including Mr. Muhammed and Mr. Yahya. Trial counsel testified that he could not call Mr. Yahya as a witness or approach him about testifying because Mr. Yahya was represented by an attorney and charged as a co-defendant. Trial counsel did not call Mr. Muhammed to testify because "there was nothing that he could add to it."

The post-conviction court denied post-conviction relief, finding that the testimony of Mr. Muhammed and Mr. Yahya would not have altered the outcome of the trial had the two witnesses been called to testify. The court found that "[a]lthough Mr. Yahya maintained there was no intent to kill anyone, his testimony incriminated Petitioner." The post-conviction court further found that Petitioner acknowledged waiving his right to testify at

trial and that Petitioner's testimony at the post-conviction hearing "implicated [Petitioner] in participating in a robbery." The court concluded that Petitioner failed to show by clear and convincing evidence that trial counsel was deficient or that Petitioner was prejudiced by counsel's alleged deficiencies.

*Analysis*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id*. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, a petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner asserts that trial counsel was ineffective for failing to properly investigate the case, failing to call material witnesses to testify at trial, failing to adequately advise Petitioner on whether he should testify at trial, and failing to present a proper defense.

Petitioner contends that counsel was ineffective for failing to call as witnesses Nashwan Muhammed and Drau Kokoye. Of those two witnesses, only Mr. Muhammed testified at the evidentiary hearing. Petitioner did not present the testimony of Mr. Kokoye at the post-conviction hearing, and the post-conviction court did not address the issue. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In his brief, Petitioner apparently cites the appellate record in the appeal from his brother Ako Nejad's post-conviction petition for the testimony of Mr. Kokoye. However, the post-conviction court denied Petitioner's request to supplement the record in this case with the testimony of Mr. Kokoye at Petitioner's brother's post-conviction hearing. Petitioner filed a motion to consolidate the records on appeal in his and his brother's post-conviction appeals, and this court concluded that the post-conviction court was in the better position to determine whether to supplement the record in Petitioner's appeal with the testimony of Mr. Kokoye because "it is unclear whether the trial court considered that evidence before ruling on [Petitioner]'s post-conviction petition." The post-conviction court denied Petitioner's request. We conclude that the evidence presented at the evidentiary hearing was insufficient to show prejudice to Petitioner because Mr. Kokoye did not testify.

Regarding the testimony of Mr. Muhammed, the post-conviction court found that his testimony "would not have altered the outcome of the trial[.]" The court accredited the testimony of trial counsel and concluded that Petitioner failed to show by clear and convincing evidence that trial counsel was ineffective for failing to call Mr. Muhammed or that Petitioner was prejudiced by the alleged deficiency. The evidence does not preponderate against the court's findings. Mr. Muhammed testified at the post-conviction court that Petitioner's brother asked him to participate in a robbery, and Mr. Muhammed decided not to get involved. He testified that Petitioner's brother did not mention killing anyone. Trial counsel testified that he did not contact Mr. Muhammed prior to trial because he did not have

anything to add to the trial other than to say that the incident was supposed to be a robbery, which was established by other witnesses. Trial counsel determined that Mr. Muhammed's testimony was not essential to Petitioner's defense. Petitioner has failed to establish that trial counsel's performance was deficient or that he was prejudiced by counsel's performance.

In his brief, Petitioner does not present any argument regarding Mr. Yahya's testimony, and the issue is therefore waived. Nevertheless, the evidence does not preponderate against the trial court's finding that Mr. Yahya's testimony also would not have altered the outcome of the trial and, in fact, would have incriminated Petitioner. The trial court accredited trial counsel's testimony that Mr. Yahya, also charged in the incident, probably would not have been permitted by his attorney to testify at trial or that Mr. Yahya would have testified favorably to Petitioner. The record supports the post-conviction court's findings. Petitioner is not entitled to relief on this issue.

Regarding Petitioner's claim that trial counsel was ineffective for failing to adequately inform Petitioner about his right to testify, the post-conviction court found that Petitioner's testimony at the post-conviction hearing of what Petitioner would have testified to had he testified at trial implicated him in a robbery. The court further found that Petitioner acknowledged waiving his right to testify at trial. The record supports the post-conviction court's findings. Petitioner testified that he planned to "get [his] money back by robbing [the intended victims]." Although Petitioner maintained that he did not intend to kill anyone, he acknowledged that weapons were found at the scene and were brought for the purpose of committing the robbery. Petitioner also acknowledged that he waived his right to testify and did not express his desire to testify to the trial court. Trial counsel testified that he advised Petitioner not to testify because he had concerns that Petitioner's testimony that he was an admitted drug dealer would prejudice the jury against Petitioner. Petitioner has failed to establish that counsel's performance was deficient or that Petitioner was prejudiced by the alleged deficiency.

Finally, Petitioner asserts that "[t]rial counsel failed to mount any defense whatsoever in this case[.]" Specifically, Petitioner asserts that counsel failed to interview or call Mr. Muhammed or Mr. Kokoye, and "[i]nstead, [trial counsel] argued to the jury that [Petitioner] was not at the scene, all the while knowing that there was insurmountable evidence to the contrary." We have already addressed Petitioner's claim that counsel was ineffective for failing to call as witnesses Mr. Muhammed or Mr. Kokoye. Regarding the issue of trial counsel's general failure to present a defense, trial counsel testified at the post-conviction hearing that the defense he presented to the jury was that the plan was to commit a robbery and not a murder and that the State did not present sufficient evidence that Petitioner was present at the time of the incident. We conclude that Petitioner has not shown by clear and

-6-

convincing evidence that counsel's performance was deficient or that he was prejudiced. Petitioner is therefore not entitled to relief.

In conclusion, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE